**FILED**

JUL 2 2 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NASSER MAZYAD ABDULLAH AL-
SUBAIY,
Detainee, Guantánamo Bay Naval Station
Guantánamo Bay, Cuba;

ABDULLAH MAZYAD AL- SUBAIY,
as Next Friend of Nasser Mazyad Abdullah
Al-Subaiy

        Petitioners/Plaintiffs,

        v.

GEORGE W. BUSH,
President of the United States
The White House
1600 Pennsylvania Ave., N.W. Washington,
D.C. 20500;

DONALD RUMSFELD,
Secretary, United States
Department of Defense
1000 Defense Pentagon
Washington, D.C. 20301-1000;

ARMY BRIGADIER GEN. JAY HOOD,
Commander, Joint Task Force – GTMO
JTF-GTMO
APO AE 09360; and

ARMY COLONEL Mike Bumgarner,
Commander, Joint Detention Operations
Group
JTF-GTMO
APO AE 09360,

        Respondents/Defendants.

**PETITION FOR WRIT OF HABEAS CORPUS**

CASE NUMBER  1:05CV01453

JUDGE: Gladys Kessler

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 07/22/2005

1

Petitioner Nasser Mazyad Abdullah Al-Subaiy ("Detainee Al-Subaiy"), a civilian designated as an "enemy combatant" by the President of the United States, is being held virtually *incommunicado* in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo") without basis, without charge, without access to counsel and without being afforded any fair process by which he might challenge his designation and detention, by color and alleged authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus, and order injunctive and declaratory relief.

## I.
## PARTIES

### Nasser Mazyad Abdullah Al-Subaiy

1.      Detainee Al-Subaiy seeks a Writ of Habeas Corpus. He acts on his own behalf and through his Next Friend, Abdullah Mazyad Al-Subaiy ("Mr. Al-Subaiy"), his brother. Detainee Al-Subaiy is a Saudi Arabian citizen who is presently incarcerated and held in Respondents' unlawful custody at the United States Naval Station at Guantánamo. All relevant facts known to counsel are described in the attached Affidavit of Mr. Al-Subaiy ("Al-Subaiy Affidavit"), attached as Exhibit A to the accompanying Affidavit of Julia Tarver, Esq. ("Tarver Affidavit").

### Respondents

2.      Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. On information and belief, Respondent Bush asserts that he is authorized to detain Detainee Al-Subaiy pursuant to his authority as Commander-in-Chief and under the laws and usages of war or, alternatively, pursuant to the

2

Executive Order of November 13, 2001 ("Military Order") (attached as Exhibit B to the Tarver Affidavit). President Bush is responsible for the unlawful detention of Detainee Al-Subaiy and is sued in his official capacity.

3.      Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Purportedly pursuant to either the Military Order or the President's authority as Commander-in-Chief and under the laws and usages of war, Respondent Rumsfeld has been charged with maintaining the custody and control of Detainee Al-Subaiy. He is sued in his official capacity.

4.      Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at the United States Naval Station, Guantánamo Bay. He has supervisory responsibility for Detainee Al-Subaiy and is sued in his official capacity.

5.      Respondent Army Col. Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where, on information and belief, Detainee Al-Subaiy is presently held. Upon information and belief, he is the immediate custodian responsible for Detainee Al-Subaiy's detention and is sued in his official capacity.

## II.
## JURISDICTION

6.      Petitioners bring this action pursuant to 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242, and invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I, II and III of, and the Fifth, Sixth, and Eighth Amendments to, the

United States Constitution.  Because they seek declaratory relief, Petitioners also rely on Fed. R. Civ. P. 57.

7.     This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus, and to entertain the Petition filed by Mr. Al-Subaiy as Next Friend under 28 U.S.C. § 2242.  This Court is further empowered to entertain the Petition pursuant to *Rasul* v. *Bush*, 124 S. Ct. 2686 (2004).  This Court is empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction.

## III.
## STATEMENT OF FACTS

8.     All facts known to counsel are described in the Al-Subaiy Affidavit, attached as Exhibit A to the Tarver Affidavit, and are incorporated herein.  On information and belief, Detainee Al Subaiy is being held virtually *incommunicado* in military custody at Camp Delta, at the United States Naval Station at Guantánamo, without basis, without charge, without access to counsel and without being afforded any fair process by which he might challenge his designation and detention, and by asserted color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as customary international law.  On information and belief, Detainee Al-Subaiy has not been proven to be and in fact is not, nor has he ever been, either an enemy alien, lawful or unlawful belligerent, a combatant of any kind, or an "enemy combatant" who was "part of or supporting forces hostile to the United States or

coalition partners in Afghanistan and who [was] engaged in an armed conflict against the United

States there." *See Hamdi* v. *Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

9.    On information and belief, at the time of his detention, Detainee Al-Subaiy was

not a member of the Taliban Government's armed forces, Al Qaeda, or any other type of terrorist

or radical group; nor did he cause or attempt to cause any harm to American personnel or

property prior to his detention.  He remains incarcerated at the U.S. Naval Station at

Guantánamo, a territory over which the United States exercises exclusive jurisdiction and

control.

### The Joint Resolution

10.    In the wake of the attacks on the United States that occurred on September 11,

2001, the United States, at the direction of President Bush, began a military campaign against the

Taliban government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution

of Congress authorized President Bush to use force against the "nations, organizations, or

persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11,

2001, or [that] harbored such organizations or persons."  Joint Resolution 23, Authorization for

Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

### The Military Order

11.    On November 13, 2001, Respondent Bush issued an Executive Order authorizing

Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

       "(i)    is or was a member of the organization known as al Qaida;

      (ii)    has engaged in, aided or abetted, or conspired to commit, acts of

international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or

have as their aim to cause, injury to or adverse effects on the United States, its citizens, national

security, foreign policy, or economy; or

> (iii)    has knowingly harbored one or more individuals described in

subparagraphs (i) and (ii) . . . ."

*See* Military Order. According to the terms of the order, President Bush must make this

determination in writing. *Id.* The Military Order was neither authorized nor directed by

Congress, and is beyond the scope of the Joint Resolution of September 18, 2001, and violates

the Constitution, laws and treaties of the United States, and customary international law.

12.    The Military Order vests President Bush with complete discretion to identify

individuals who fall within its purview. It establishes no standards governing the exercise of his

discretion. Once a person has been detained, the Military Order contains no provision for that

person to be notified of the charges he may face. The Military Order authorizes detainees to be

held without charges. It contains no provision for a detainee to be notified of his rights under

domestic and international law, and provides neither the right to counsel nor the right to consular

access. It provides no right to appear before a neutral tribunal to review the legality of a

detainee's continued detention and no provision for appeal to an Article III court. In fact, the

Military Order expressly bars review by any court. The Military Order authorizes indefinite and

unreviewable detention, based on nothing more than President Bush's written determination that

an individual is subject to its terms.

13.    The Military Order was promulgated in the United States and in this judicial

district, and, on information and belief, the decision to incarcerate Detainee Al-Subaiy was made

by Respondents in the United States and in this judicial district, the decision to detain Detainee

6

Al-Subaiy at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Detainee Al-Subaiy was, and is, being made by Respondents in the United States and in this judicial district.

14.    On information and belief, President Bush has never certified or determined in any manner, in writing or otherwise, that Detainee Al-Subaiy is subject to the Military Order.

15.    Detainee Al-Subaiy is not properly subject to the Military Order, and, in any event, the Military Order is unjust, *ultra vires*, and violates the laws, treaties, and Constitution of the United States. Detainee Al-Subaiy is being detained unlawfully purportedly pursuant to President Bush's authority as Commander-in-Chief or under the laws and usages of war.

### Guantánamo Bay Naval Station

16.    On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Station at Guantánamo. In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo. Offenses committed by both civilians and foreign nationals living at Guantánamo are brought before United States District Courts, where respondents enjoy the full panoply of Constitutional rights. Detainees incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul* v. *Bush*, 124 S. Ct. 2686 (2004).

17.    Detainee Al-Subaiy is being held at Guantánamo, in the custody of President Bush and Respondents Rumsfeld, Hood, and Bumgarner.

### The Conditions of Detention at Guantánamo

18.    Since gaining control of Detainee Al-Subaiy, the United States military has held him virtually *incommunicado*. On information and belief, he has been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with any offense, nor has he been notified of any pending or contemplated charges. On information and belief, he has made no appearances before either a military or civilian tribunal of any sort, nor has he been provided counsel or the means to contact counsel, and is being held under conditions that violate his international and constitutional rights to dignity and freedom from cruel, unusual and degrading treatment or punishment. On information and belief, he has not been informed of his rights under domestic or international law. On information and belief, Detainee Al-Subaiy has been forced to provide involuntary statements to Respondents' agents at Guantánamo.

19.    Respondents claim that their conduct was and is authorized by the President's authority as Commander-in-Chief of the United States Military and/or the Military Order. Respondents' acts were not, and are not, so authorized, and in fact violated Detainee Al-Subaiy's rights under, *inter alia*, the United States Constitution, the regulations of the United States Military, the Geneva Conventions, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, and customary international law.

20.    On information and belief, Detainee Al-Subaiy has been held under conditions that violate his international and constitutional rights to dignity and freedom from cruel, unusual and degrading treatment or punishment. Reports of these violations include being placed in solitary confinement and denied exercise; being required to wear full restraints, including leg-irons; being given an inadequate diet; and being denied contact visits with families. *See*

8

Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror,'* at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR511452004) (last visited Jan. 25, 2005); *see also* Barry C. Scheck, Abuse of Detainees at Guantánamo Bay, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5. Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques <u>approved</u> for use at Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II, General Counsel DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations,* at 62-65 (Apr. 4, 2003).[1]

21.     On information and belief, Detainee Al-Subaiy has been forcibly compelled to violate fundamental tenets of his faith through a deliberate pattern of torture targeted at devout Muslims. *See, e.g., Ex-G.I. Writes About Use of Sex in Guantánamo Interrogations,* Assoc. Press, Jan. 28, 2005 (detailing interrogation tactic of smearing fake menstrual blood by a female interrogator on face of detainee in order to make him feel impure).

---

[1]   Details of the cruel and degrading conditions suffered by detainees at Guantánamo are set out at length in a statement by several released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantánamo Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23july04.pdf) (last visited Jan. 25, 2005). The Department of Defense also informed the Associated Press that a number of interrogators at Guantánamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantánamo Abuses*, Assoc. Press, Nov. 4, 2004.

22.     On information and belief, Detainee Al-Subaiy has been denied adequate medical treatment. *See, e.g.,* Robert Jay Lifton, M.D., *Doctors and Torture,* 5 New Eng. J. Med. 351, 415 (2004) (discussing complicity of medical professionals in torture of detainees at Abu Ghraib and Guantánamo).

23.     In published statements, President Bush and Respondent Rumsfeld, and predecessors of Hood and Bumgarner, preceded by Lehnert and Carrico, have proclaimed that the United States may hold Detainee Al-Subaiy under these conditions indefinitely. *See, e.g.,* Roland Watson, The Times (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); John Mintz, *Extended Detention In Cuba Mulled,* The Wash. Post, Feb. 13, 2002 ("As the Bush administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantánamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

24.     According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, *at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Jan. 25, 2005).

25.     Petitioners incorporate paragraphs 1 – 24 in each of the below claims for relief as if fully set forth therein.

10

### FIRST CLAIM FOR RELIEF
### (DUE PROCESS - FIFTH AMENDMENT
### TO THE CONSTITUTION OF THE UNITED STATES
### UNLAWFUL DEPRIVATION OF LIBERTY)

26.    Respondents, acting under color of law, have violated and continue to violate, *inter alia*, the Fifth Amendment to the Constitution of the United States. Respondents' actions deny Detainee Al-Subaiy the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

27.    To the extent that Detainee Al-Subaiy's detention is authorized by the Military Order, that Order violates the Fifth Amendment on its face and as applied to Detainee Al-Subaiy, and is, in any event, otherwise unlawful in its entirety.

28.    Accordingly, Detainee Al-Subaiy is entitled to habeas, declaratory and injunctive relief as well as any other relief the court may deem appropriate.

### SECOND CLAIM FOR RELIEF
### (DUE PROCESS - FIFTH AMENDMENT
### TO THE CONSTITUTION OF THE UNITED STATES
### UNLAWFUL CONDITIONS OF CONFINEMENT)

29.    Respondents, acting under color of law, have violated and continue to violate the rights of Detainee Al-Subaiy to be free from arbitrary, prolonged, and indefinite detention and unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States by, *inter alia*, detaining him

11

indefinitely in conditions that are an affront to human dignity. On information and belief, Detainee Al-Subaiy has been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; forcibly compelled to violate fundamental tenets of their faith; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

30.    The President's Military Order of November 13, 2001, as applied to Detainee Al-Subaiy, violates the Fifth Amendment.

31.    Accordingly, Detainee Al-Subaiy is entitled to habeas, declaratory and injunctive relief as well as any other relief the court may deem appropriate.

### THIRD CLAIM FOR RELIEF
### (ARBITRARY DENIAL OF DUE PROCESS - GENEVA CONVENTIONS)

32.    Respondents, acting under color of law, have denied and continue to deny Detainee Al-Subaiy the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

33.    Violations of the Geneva Conventions are direct treaty violations, and are also violations of customary international law.

12

34.     Respondents are liable for this conduct described above directly and in so far as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

35.     Accordingly, Detainee Al-Subaiy is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

FOURTH CLAIM FOR RELIEF
(ARBITRARY DENIAL OF DUE PROCESS – INTERNATIONAL
HUMANITARIAN AND HUMAN RIGHTS LAW)

36.     Respondents have denied and continue to deny Detainee Al-Subaiy the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

37.     Because Respondents are detaining Detainee Al-Subaiy "under or by color of the authority of the United States" and "in violation the Constitution or laws or treaties of the United States," Detainee Al-Subaiy's claims arise under 28 U.S.C. § 2241 and he is entitled to habeas relief as well as any other relief the court may deem appropriate.

38.     Accordingly, Detainee Al-Subaiy is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

13

## FIFTH CLAIM FOR RELIEF
## (VIOLATIONS OF THE LAW OF NATIONS -
## ALIEN TORT CLAIMS ACT)

39.    Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Detainee Al-Subaiy in order to obtain coerced information or confessions from him, punish or intimidate Detainee Al-Subaiy or for other purposes.  On information and belief, Detainee Al-Subaiy has been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; forcibly compelled to violate fundamental tenets of their faith; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

40.    The acts described herein had the intent, and the effect, of grossly humiliating and debasing Detainee Al-Subaiy, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

41.    The acts described herein constitute torture; war crimes and/or crimes against humanity, committed in violation of the applicable provisions of the Geneva Conventions and the Additional Protocols thereto; cruel, inhuman or degrading treatment; arbitrary arrest and prolonged arbitrary detention; and enforced disappearances in violation of the law of nations under the Alien Tort Claims Act, 28 U.S.C. § 1350, in that the acts violated customary

14

international law prohibiting these crimes as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities, including, *inter alia*, Common Article III of the Geneva Conventions, Additional Protocol II of the Geneva Conventions, the Fourth Geneva Convention, and Additional Protocol I of the Geneva Conventions.

42.     Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the violations of the law of nations against Detainee Al-Subaiy.

43.     As a result of Respondents' unlawful conduct, Detainee Al-Subaiy has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse and agony, and is therefore entitled to declaratory and injunctive relief and such other relief as the court may deem appropriate.

SIXTH CLAIM FOR RELIEF
(UNLAWFUL DETENTION IN VIOLATION OF ARTICLE II OF THE UNITED STATES CONSTITUTION)

44.     Detainee Al-Subaiy is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or a combatant of any kind. The Executive lacks the authority to order or direct military officials to detain civilians who are seized outside the theater of war or occupied territory who are not engaged in hostilities against the United States.

45.     By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Detainee Al-Subaiy and

transfer him to military detention, and by authorizing and ordering his continued military

detention at Guantánamo. All of the Respondents acted and continue to act without lawful

authority by directing, ordering, and/or supervising the seizure and military detention of Detainee

Al-Subaiy.

46.    The military seizure and detention of Detainee Al-Subaiy by the

Respondents is *ultra vires* and illegal being in violation of Article II of the United States

Constitution. To the extent that the Executive asserts that Detainee Al-Subaiy's detention is

purportedly authorized by the Military Order, that Order exceeds the Executive's authority under

Article II and is *ultra vires* and void on its face and as applied to Petitioners.

47.    Accordingly, Detainee Al-Subaiy is entitled to habeas, declaratory, and

injunctive relief as well as any other relief the court may deem appropriate.

## SEVENTH CLAIM FOR RELIEF
## (VIOLATIONS OF THE ADMINISTRATIVE PROCEDURES ACT)

48.    Respondents have detained Detainee Al-Subaiy in violation of Army

Regulation 190-8, which prohibits the detention of civilians who were seized away from the field

of battle or outside occupied territory and who were not engaged in combat against the United

States. *See*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent

tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise

penalized without further proceedings to determine what acts they have committed and what

penalty should be imposed.").

49.    By arbitrarily and capriciously detaining Detainee Al-Subaiy in military

custody for nearly three years in the manner described above; by denying Detainee Al-Subaiy the

16

process afforded to persons seized and detained by the U.S. Military in times of armed conflict pursuant to Army Reg. 190-8; and by directing, ordering, conforming, ratifying, or conspiring to torture unlawfully Detainee Al-Subaiy in violation of Army Reg. 190-8, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

50.    Accordingly, Detainee Al-Subaiy is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## IV.
## PRAYER FOR RELIEF

WHEREFORE, for the above stated and other such reasons as may appear to this Court, Petitioners pray for relief as follows:

1.    Designate Abdullah Mazyad Al-Subaiy as Next Friend of Nasser Mazyad Al-Subaiy;

2.    Order Detainee Al-Subaiy released from Respondents' unlawful custody;

3.    Order Respondents to allow counsel to meet and confer with Detainee Al-Subaiy in private and unmonitored attorney-client conversations;

4.    Order Respondents to cease all interrogations of Detainee Al-Subaiy, direct or indirect, while this litigation is pending;

5.    Order Respondents to cease all acts of torture and abuse of Detainee Al-Subaiy;

6.    Order and declare the Military Order of November 13, 2001, *ultra vires* and unlawful in violation of the Fifth Amendment to the United States Constitution; *ultra vires* and unlawful in violation of Article II of the United States Constitution; *ultra vires* and unlawful as a

17

violation of the Administrative Procedures Act, 5 U.S.C. § 702; and unlawful as a violation of the treaties of the United States and customary international law;

7.    Order and declare that Detainee Al-Subaiy is being held in violation of the Fifth Amendment to the United States Constitution; and that the prolonged, indefinite, and restrictive detention of Detainee Al-Subaiy is arbitrary and unlawful, a deprivation of liberty without due process in violation of the Fifth Amendment to the United States Constitution, and in violation of the treaties of the United States and customary international law;

8.    Order and declare that Detainee Al-Subaiy is being held in violation of the treaties of the United States and customary international law, and is being held in violation of the regulations of the United States Military, the Geneva Conventions, and customary international humanitarian law;

9.    Order Respondents to provide Petitioners immediately with factual returns detailing the basis upon which Detainee Al-Subaiy is allegedly being detained;

10.    To the extent Respondents contest any material factual allegations in this Petition, schedule an evidentiary hearing, at which Petitioners may adduce proof in support of their allegations;

11.    Provide Petitioners an opportunity to engage in full and fair discovery, and the right to amend this Petition; and

12.    Grant such other relief as the Court may deem necessary and appropriate to protect Petitioners' rights under the United States Constitution, federal statutory law, and international law.

Dated: July 22, 2005

                             Respectfully submitted,

                             Counsel for Petitioners:

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By

    Julia Tarver (NY0029)
    Jennifer Ching
    Andrea J. Prasow

    1285 Avenue of the Americas
    New York, New York 10019-6064
    (212) 373-3000

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioners certify, pursuant to L. Cv. R. 83.2(g), that they are

representing Petitioners without compensation.

Dated: July 22, 2005

Julia Tarver (NY0029)
Jennifer Ching
Andrea J. Prasow
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioners certify, pursuant to L. Cv. R. 83.2(g), that they are

representing Petitioners without compensation.

Dated: July 22, 2005

Julia Tarver (JT 0029)
Jennifer Ching
Andrea J. Prasow
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenuc of the Americas
New York, NY  10019-6064
Tel:  (212) 373-3000
Fax:  (212) 757-3990

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioners certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioners without compensation.

Dated: July 22, 2005

_____
Julia Tarver (NY0029)
Jennifer Ching
Andrea J. Prasow
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Tel:  (212) 373-3000
Fax:  (212) 757-3990