IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NASSER MAZYAD ABDULLAH AL-SUBAIY, *et al.*, | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-1453 (GK) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) ) | |
| Respondents. | ) ) | |

**RESPONDENTS' REPLY MEMORANDUM IN SUPPORT
OF MOTION TO STAY PROCEEDINGS PENDING RELATED
APPEALS AND FOR CONTINUED COORDINATION**

Respondents hereby submit this reply memorandum in support of their motion to stay proceedings pending related appeals and for continued coordination and in response to Petitioners' Conditional Consent to Respondents' Motion to Stay Proceedings ("Petitioners' Brief"). Petitioner Al-Subaiy consents to this case being stayed on condition, however, that (1) respondents provide at least 30 days' advance notice of petitioner's transfer or removal from Guantanamo Bay; (2) respondents promptly file factual returns providing the basis for petitioner's detention; and (3) the parties be allowed to file motions for emergency relief. See Petitioners' Brief at 2. As demonstrated below, contrary to petitioner's suggestions, this case should be stayed without requiring the provision of 30 days' advance notice of any transfer of petitioner and without compelling the submission of factual returns.[1]

---

[1] A stay presumably would be subject to the Court's discretion to modify the stay to permit the consideration of requests for emergency relief should circumstances arise truly warranting such an exception to the stay.

## ARGUMENT

I. **A Stay Should Not Be Conditioned on Advance Notice of Any Transfer of Petitioner.**

Petitioner's attempt to condition a stay in this case on a requirement of 30 days' advance notice of any transfer of petitioner seeks to sidestep his burden of demonstrating that he is entitled to preliminary injunctive relief. Petitioner's attempt, however, must fail because his request for relief clearly is injunctive in nature, and it is made at the outset of the case making it "preliminary" injunctive relief as well. See, e.g., Black's Law Dictionary 540 (Abridged 6th ed. 1991) (defining "preliminary injunction" as "[a]n injunction granted at the institution of a suit, to restrain the defendant from doing or continuing some act, the right to which is in dispute . . . ."). Preliminary injunctive relief "is an extraordinary and drastic remedy" that should not be available "unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original). And preliminary injunctive relief is not warranted unless the movant can clearly demonstrate that (1) the movant will suffer irreparable injury in the absence of an injunction; (2) the movant has a substantial likelihood of success on the merits with respect to the requested relief; (3) the injunction would not substantially injure other interested parties; and (4) the injunction would further the public interest. See Al-Fayed v. CIA, 254 F.3d 300, 303 (D.C. Cir. 2001).

Petitioner cannot circumvent these requirements merely by seeking the same measure of relief in the form of a condition on a proposed stay. Two other decisions in related GTMO detainee cases have rejected such tactics. In Al-Anazi v. Bush, 370 F. Supp. 2d 188, 199 n.11 (D.D.C. 2005), the Court rejected petitioners' request for advance notice of transfer and explained that "if petitioners cannot meet the prerequisites of a motion for preliminary injunction

(as the Court concludes), it is unlikely they should receive that same relief through the backdoor of a stay." Similarly, in <u>Battayav v. Bush</u>, No. 05-CV-714 (RBW), Order at 3-5 (May 18, 2005) (dkt. no. 12), the Court determined that petitioners' request that any stay order imposed be accompanied by an order to provide, inter alia, 60 days' notice of any Administrative Review Board proceeding was effectively a request for preliminary injunctive relief without any factual support. The Court stated that petitioners' request for 60 days' notice was "in effect a motion for a preliminary injunction," but petitioners made "no attempt to show that they satisfy the criteria for obtaining injunctive relief, <u>e.g.</u>, irreparable harm and likelihood of success on the merits." <u>Id.</u> at 4-5. Accordingly, petitioner has the burden to make a clear showing that he is entitled to the injunctive relief he seeks.

Petitioner, however, has not adequately demonstrated that his request for 30 days' advance notice of transfer is factually or legally justified. Such relief is inappropriate, as more fully expressed in respondents' Memorandum in Opposition to Petitioners' Motion for Temporary Restraining Order and Preliminary Injunction Requiring Advance Notice of Any Intended Removal of Petitioner from Guantanamo, filed in <u>Al Hela v. Bush</u>, Civ. A. No. 05-1048 (RMU), on June 3, 2005 (dkt. no. 10). The memorandum, and its accompanying declarations, are attached hereto as Exhibits 1-3, and are incorporated herein by reference.[2] For the reasons set forth in that memorandum and the declarations, respondents respectfully request that petitioner's request that any stay of this case be conditioned on the provision of such advance

---

[2] While respondents recognize that this Court has issued orders in other Guantanamo detainee habeas cases requiring advance notice of transfer of petitioners in those cases, <u>see, e.g.</u>, <u>Al Joudi v. Bush</u>, Civ. A. No. 05-301 (Memorandum Opinion; April 4, 2005; dkt. no. 20), respondents respectfully continue to oppose such relief in this case.

notice be denied.

## II.     The Production of Factual Returns is Not Appropriate While the Case is Stayed.

Despite the fact that petitioner acquiesces to the imposition of a stay in this case, he nevertheless insists that a factual return should be filed and that respondents should be required to file a return no later than August 20, 2005.  See Petitioners' Brief at 4-6.  Petitioner's dismissive treatment of the needless expenditure of judicial and litigation resources that would result from an order requiring the submission of a factual return underestimates the burden on the government in producing a factual return and ignores the cascade effect that would follow from such an order.[3]  Contrary to petitioner's suggestion, the production of a factual return in these cases requires substantially more effort than merely "photocopying, sorting and stapling." Petitioners' Brief at 5.  As explained in respondents' motion to stay, each factual return must be obtained from the Department of Defense ("DoD") and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the return is in accordance with all applicable statutes, regulations and Executive Orders.  Respondents must then prepare both a public and a classified version of the factual return for submission to the Court and counsel.

Additionally, this burden could increase exponentially because a decision to require submission of a factual return pending the resolution of the appeals in Khalid, et al.  and In re Guantanamo Detainee Cases could precipitate a chain reaction — the scores of petitioners in

---

[3] Respondents acknowledge that this Court has also ordered the production of factual returns in other Guantanamo detainee habeas cases.  See, e.g., Al Joudi v. Bush, Civ. A. No. 05-301 (Order; April 29, 2005; dkt. no. 26).  Respondents, nevertheless, respectfully continue to oppose such relief in this case.

other pending and future Guantanamo Bay detainee habeas cases, seeking parity of treatment, would likely request the Court to allow access to factual returns in those cases, perhaps even by lifting or modifying stays that have already been entered.[4]  This scenario is exactly what Judge Green aimed to avoid when she denied petitioners' motion to reconsider her order granting a stay pending appeal "in light of the substantial resources that would be expended and the significant burdens that would be incurred should this litigation go forward."  See Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in In re Guantanamo Detainee Cases (Feb. 7, 2005) (Green, J.).  Further, submission of these returns will increase the risks of inadvertent or other disclosure or compromise of classified information.  Given that the D.C. Circuit will be considering the proper scope of these proceedings, including whether the claims of petitioner can be dismissed without reference to a specific factual return, the substantial burdens on government resources and increased risk occasioned by a requirement to provide petitioner's counsel access to a factual return should not be imposed, especially when those burdens and risks may ultimately prove unnecessary.

    In the event the Court orders the submission of a factual return, however, it could only be done pursuant to a coordinated and reasonable schedule, taking account of the fact that petitioners in all of the recently filed cases are seeking factual returns and given the logistical burdens posed by an undertaking to produce returns in these cases, as discussed above.  A schedule for any such undertaking should be no more restrictive than is necessary; for example, a schedule for the production of a factual return in this case (and potentially other cases) over

---

[4] Presently, there are approximately 115 habeas cases pending on behalf of well over 200 detainees at Guantanamo Bay; the majority of those cases and petitioners were not subject to the decisions of Judges Leon and Green in Khalid, et al. and In re Guantanamo Detainee Cases.

anything less than the next 10 to 12 weeks would be burdensome. See e.g., Al-Joudi, No. 05-301 (GK) (dkt. no. 26) (imposing 90-day schedule); Al-Adahi, No. 05-280 (GK) (dkt. no.35) (imposing 90-day schedule); Ameziane, No. 05-CV-392 (ESH) (dkt. no. 12) (imposing 90-day schedule); Al-Anazi, No. 05-CV-0345 (JDB) (dkt. no. 21) (imposing 120-day schedule); Qayed, No. 05-CV-0454 (RMU) (dkt. no. 5) (imposing 90-day schedule); Battayav, No. 05-CV-0714 (RBW) (dkt. no. 12) (imposing 120-day schedule). At a minimum, in light of their current obligations to produce numerous factual returns in other cases, respondents should be given the 90-day schedule which this Court has approved for other Guantanamo Bay cases. See e.g, Al-Joudi, No. 05-301 (GK) (dkt. no. 26).

In any event, the Court should not subject respondents to a requirement to produce a factual return for the petitioner in this case in four days, i.e., by August 20, 2005. Petitioner seeks such an order based on the claim that petitioner's counsel plan to visit petitioner at Guantanamo Bay on September 30, 2005. Petitioners' Brief at 6. Petitioner's counsel, however, fail to justify why they would need the 40-day period from August 20 to September 30 to review the factual return.[5] Their request is unreasonable, unnecessary, and unduly burdensome to respondents.

Indeed, it would be unduly burdensome to key any requirement to produce factual returns to a scheduled or desired visit to Guantanamo Bay by counsel. There are a large number of newly filed Guantanamo Bay habeas cases, involving scores of petitioners, in which counsel

---

[5] Counsel's statement that they need this time to "travel to Washington, D.C. and review the evidence in the secure facility, and to initiate an investigation into the Government's claims" is hardly persuasive. Petitioners' Brief at 6. Travel to Washington and review of the return can be accomplished in far less than 40 days, obviating any need for the immediate production of petitioner's factual return.

have requested or are requesting factual returns and in which counsel visits are being or will likely be requested. The logistics of making a factual return and the logistics of scheduling counsel visits involve two separate and unrelated undertakings, and the ability to arrange for a visit does not mean that factual returns pertaining to detainees involved in any particular visit can necessarily be completed prior to the visit. Furthermore, the possibility of return visits to Guantanamo Bay by petitioner's counsel would counter the need for a factual return prior to any particular visit.

For these reasons, the Court should not order the production of a factual return for petitioner in this case, and in no event should it require a return to be produced by August 20, 2005.

Additionally, petitioner's request for records of Annual Review Board ("ARB") proceedings pertaining to him is improper and should be denied outright. The purpose of the ARB proceedings is distinct from the issue involved in petitioner's habeas claims. The habeas corpus petitions concern whether petitioners are properly subject to continued detention by the United States, that is, whether petitioners have been legitimately determined to be enemy combatants and, thus, may be detained for the duration of hostilities. See Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2640 (2004) (concluding that detention of enemy combatants "for the duration of the particular conflict in which they were captured, is so fundamental and accepted an incident to war as to be an exercise of the 'necessary and appropriate force' Congress has authorized the President to use."). The ARB proceedings, on the other hand, are designed to assess, on an annual basis, not whether a detainee may be detained as an enemy combatant, but whether it is in the interests of the United States to release or transfer (or continue to detain) individuals already

determined to be enemy combatants.  This decision is based on a weighing and balancing of factors, such as the threat a detainee is believed to pose to the United States or its allies in the ongoing armed conflicts against al Qaeda and its supporters, and the detainee's continuing intelligence value.  See Memorandum dated September 14, 2004, re: Implementation of Administrative Review Procedures for Enemy Combatants Detained at U.S. Naval Base Guantanamo Bay, Cuba, (available at http://www.defenselink.mil/news/Sep2004/d20040914adminreview.pdf).  As a result, the ARB issues and the habeas issues are not the same; indeed, the ARB determination involves a complex weighing of factors and exercise of discretion by the Military that is not justiciable.  See, e.g., Dist. No. 1, Pacific Coast Dist., Marine Engs. Beneficial Ass'n v. Maritime Admin., 215 F.3d 37, 42 (D.C. Cir. 2000) (finding that Executive's "judgments on questions of foreign policy and national interest . . . are not subjects fit for judicial involvement").[6]  Records of the ARB proceedings are thus not required to be included in the factual returns, and no court has

---

[6] Indeed, the D.C. Circuit has specifically held that the Executive Branch's determination regarding the existence of a national security risk is not justiciable.  See People's Mojahedin Org. of Iran v. United States Dep't of State, 182 F.3d 17, 23 (D.C. Cir. 1999) (determination by the Secretary of State that "the terrorist activity of the organization threatens the security of United States nationals or the national security of the United States" was "nonjusticiable.").  Thus, the balancing of national security risk and needs involved in a determination concerning the appropriateness of the continued detention of an enemy combatant is a matter entirely inappropriate for judicial review.  See Industria Panificadora, S.A. v. United States, 763 F. Supp. 1154, 1160 (D.D.C. 1991) ("[D]ecisions which affect our national security involve policy decisions beyond the scope of judicial expertise. 'To attempt to decide such a matter without the necessary expertise and in the absence of judicially manageable standards would be to entangle the court in matters constitutionally given to the executive branch.'" (citation omitted)), aff'd on other grounds, 957 F.2d 886 (D.C. Cir. 1992).

ordered their production in any of the Guantanamo habeas cases.[7]

## CONCLUSION

For the reasons stated in respondents' motion to stay proceedings pending related appeals and for continued coordination, and in this supporting reply memorandum, this Court should stay further proceedings in the above-captioned case pending the appeals of Judge Leon's decision in Khalid, et al. and Judge Green's decision in In re Guantanamo Detainee Cases. The stay, however, should not be conditioned on respondents providing 30 days' advance notice of any planned removal of petitioner from Guantanamo Bay or on respondents producing a factual return or ARB records for petitioner.

---

[7] Moreover, petitioner's request for ARB records is simply an improper attempt to conduct discovery in this habeas case at a time when the case should be stayed. Petitioner has not obtained leave of court to seek discovery, as required in habeas cases. See, e.g., Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999) (explaining that "[a] habeas petitioner does not enjoy the presumptive entitlement to discovery of a traditional civil litigant," and that "discovery is available only in the discretion of the court and for good cause shown."); Al Odah v. United States, 329 F. Supp. 2d 106, 107-08 (D.D.C. 2004) (finding that Guantanamo detainee habeas petitioners must first seek leave of court before conducting discovery and denying leave to conduct discovery); cf. Rule 6(a) of the Rules Governing Section 2254 Cases (requiring leave of court for good cause shown before discovery may be conducted). Even if leave were requested, discovery would be inappropriate in light of the compelling reasons to stay this case pending appellate review of Khalid, et al. and In re Guantanamo Detainee Cases by the D.C. Circuit. And, in any event, as discussed above, records of ARB proceedings would be outside the proper scope of discovery.

Dated: August 16, 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

DOUGLAS N. LETTER
Terrorism Litigation Counsel

   /s/ Edward H. White
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE (D.C. Bar No. 468531)
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7144
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents